UNITED STATES, Appellee,

v.

Private E2 Eladio S. TALBERT, SSN 560–23–0599, United States Army, Appellant.

CM 438959.

U. S. Army Court of Military Review.

30 Sept. 1980.

Captain H. Franklin Young, III, JAGC, argued the cause for the appellant. With him on the brief were Colonel Edward S. Adamkewicz, Jr., JAGC, Lieutenant Colonel John F. Lymburner, JAGC, and Major Elliot J. Clark, Jr., JAGC.

Captain Glenn D. Gillett, JAGC, argued the cause for the appellee. With him on the brief were Colonel R. R. Boller, JAGC, Major Ted B. Borek, JAGC, and Captain Brian X. Bush, JAGC.

Before MITCHELL, DRIBBEN and WATKINS, Appellate Military Judges.

## OPINION OF THE COURT

### PER CURIAM:

A general court–martial convicted appellant of attempted robbery and wrongful possession of marihuana and heroin in violation of Articles 80 and 134, Uniform Code of Military Justice (U.C.M.J.), 10 U.S.C. §§ 880 and 934 (1976), respectively. He was sentenced to a dishonorable discharge, confinement at hard labor for five years, and forfeiture of all pay and allowances. The convening authority approved the sentence. The appeal comes to us pursuant to Article 66, U.C.M.J., 10 U.S.C. § 866 (1976).

The question in this case is whether the discovery of the marihuana and heroin was the result of a valid inventory of an impounded vehicle or the result of an illegal search.

### I

On the evening of 18 February 1979, Staff Sergeant Wesner Elgirus, a military policeman, was summoned to a roadblock in Ludwigsburg, Germany. Upon arrival he found that German police had apprehended Private Talbert for operating an unsafe vehicle. After receiving custody of appellant from the German authorities, Sergeant Elgirus ordered him to proceed in his vehicle to the military police station. This was contrary to appellant's request to take his vehicle to his home nearby in order to correct the defects. Nevertheless, appellant proceeded as directed, followed by Sergeant Elgirus in a military police car with flashing emergency lights.

Appellant's automobile was locked and secured in the parking lot of the military police station and the keys were delivered to the desk sergeant under protest by appellant, who persisted in his request to take his car home to repair it. Appellant was then searched and several pills were found in his jacket. (These pills subsequently proved not to be controlled substances.) As a result of the search, appellant was told that he was under apprehension for wrongful possession of a controlled substance.

Several hours later Sergeant Elgirus informed appellant that he was going to remove the license plates from his vehicle and conduct an inventory of the automobile for "high value items." Appellant objected to this procedure, contending that he had no high value items in the car and thus there was no need for an inventory. His objection was to no avail. Sergeant Elgirus removed the license plates and searched the vehicle, including the trunk, hood, ashtrays, glove compartment and sunvisors. In the process, a small matchbox was found on the dashboard. When it was later opened in the military police station, it was found to contain marihuana and heroin.

Before this Court, as at trial, appellant challenges the lawfulness of the search of his automobile and the admission of the evidence seized during that search.

### II

During the hearing in the trial court of appellant's motion for appropriate relief Sergeant Elgirus characterized his actions

as "routine procedure." However, it was "routine" based on the way he did things during assignments at Fort Dix and with the 1st Infantry Division. He was not aware of what the local standard procedure was or even if one existed. Sergeant Elgirus claimed that his objective was to inventory any "high value items" found in appellant's automobile, although he was told by appellant that there were no such items in the car. He also said he was looking for contraband but hedged in this regard by saying he checked on anything in his "eyesight." Sergeant Elgirus also said that the vehicle without license plates would appear to be abandoned and thus be a target for thieves and vandals. He wanted to protect the Government from claims and the military police from accusations resulting from missing high value items which might have been left in the car.

At the end of the hearing, the military judge, after finding Sergeant Elgirus "did not know or at least was not acting under any specific official guidance as to his inventory of the vehicle," ruled that the marihuana and heroin were discovered as the result of a valid inventory rather than as the result of an illegal search.

### III

 We recognize that it is common practice for the police to conduct an inventory of the contents of vehicles they have taken into custody. As this Court has previously pointed out in *United States v. Hines,* 5 M.J. 916, 919 (A.C.M.R.1978):

> Inventories of property which is within the control or custody of the Government may be justified by the need for safeguarding the property while it is in the Government's custody, for protecting the Government against claims or disputes arising from the loss or theft of the property, and for protecting Government personnel against the potential hazards which might result should the Government unknowingly come into possession of dangerous substances. *See South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) (and cases cited therein) (Inventory of impounded automobile). . . .

Nevertheless, an alleged inventory cannot be used as a pretext to conduct an illegal search. In this case the record demonstrates that the facts will not support the application of any other established exception to the requirements of the Fourth Amendment.

### IV

The decision of the United States Supreme Court in *South Dakota v. Opperman, supra,* provides the basis for this Court's resolution of the issue involved in this case. The *Opperman* Court, upholding a routine police inventory of a lawfully impounded vehicle, established criteria for "reasonable" inventories which do not amount to "unreasonable" searches in violation of the Fourth Amendment. Because the opinion in effect establishes an exception to a basic and fundamental Constitutional right, its application must be carefully and jealously guarded. The *Opperman* Court disclosed the three distinct needs for this exception which this Court elucidated in *United States v. Hines, supra.* The Supreme Court also added that whether a search and seizure is unreasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case.

In reaching their decision in *Opperman,* the majority (which included Justice Powell who filed a concurring opinion adding additional reasons for joining the plurality) noted that: the inventory was conducted only after the car had been properly impounded; the owner was not present to make other arrangements for the safekeeping of his belongings; the inventory itself was prompted by the presence in plain view of a number of valuables inside the car; and there was no suggestion whatever that the procedure, essentially like that followed throughout the country, was a pretext concealing an investigatory police motive.

 Turning to the facts and circumstances before us, we entertain no doubt that there was reasonable cause to impound the car in question. The German police

apprehended appellant for operating a mechanically unsafe vehicle which could not lawfully be operated on German highways. The fact that appellant was present and objected to impoundment and inventory of the vehicle gives us no pause. Unlike the vehicle in *Opperman*, appellant's vehicle needed repair before being operated again on the highway. The inventory is not exclusively for the protection of the car owner. It also extends to the public. *See South Dakota v. Opperman*, 428 U.S. at 376 n. 10, 96 S.Ct. at 3100 n. 10 (1976). The defects, including improper lighting and a damaged front, were readily discoverable. There was no reason to believe that appellant, who deliberately operated the car in this condition, would have, had he been allowed to proceed to his residence, voluntarily corrected the deficiencies.

V

█ Our review of the record, nevertheless, causes us to conclude that the inventory was but a pretext to conduct an illegal search. The search was conducted several hours after the impoundment and only after the military police discovered what they erroneously believed to be a controlled substance in the possession of the owner of the car in question. The inventory was conducted by a policeman who did not know the local standard procedures or even if any existed; who searched among cigarette butts in the ashtray and under the hood, places where only an extraordinarily vivid imagination at best would have concluded that a person such as appellant would have kept "high value" items, and, where more realistically, one searching for evidence of crime would have sought contraband. The so-called inventory procedure resulted in no inventory at all. To conclude that the foregoing facts amount to no suggestion whatever that the inventory was a pretext concealing an investigatory police motive would strain our credulity to the breaking point.

█ Considering the facts and circumstances before us, to uphold this action as a legal inventory would encourage law enforcement officers to establish their own individual "routine procedures," create their own "self-generated exigency" condemned by our brothers in *United States v. Barden*, 9 M.J. 621 (A.C.M.R.1980), and, in short, effectively place searches of a vehicle clearly outside the protection of the Fourth Amendment.

Our measurement of the application of *Opperman*, compels us to characterize the search in question as an illegal search in violation of the Fourth Amendment. The motion to suppress the evidence obtained as a result of this search should have been granted.

VI

Accordingly the findings of guilty of Charge I and its specifications are set aside and the charge is dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted and the entire record, the Court affirms only so much of the sentence as provides for dishonorable discharge, confinement at hard labor for 30 months, and forfeiture of all pay and allowances.