UNITED STATES

v.

Sergeant Ronald F. WEISS, Jr., FR 274–56–9485, United States Air Force.

ACM S24960.

U. S. Air Force Court of Military Review.

Sentence Adjudged 9 Feb. 1980.

Decided 15 May 1981.

Appellate Counsel for the Accused: Colonel Larry G. Stephens, Colonel George R. Stevens, and Colonel Anthony C. Vance, Jr., USAFR.

Appellate Counsel for the United States: Colonel James P. Porter and Captain Michael J. Hoover.

Before EARLY, MILES and KASTL, Appellate Military Judges.

## DECISION

KASTL, Judge:

We have before us a motor vehicle inventory and the question of the reasonableness of an ensuing seizure under the Fourth Amendment to the Constitution. Finding the seizure lawful, we affirm.

The accused was tried by special court-martial for various drug offenses, in violation of Articles 92 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 934. He was found guilty by a court consisting of members and sentenced to a bad conduct discharge, confinement at hard labor for six months, forfeiture of $200.00 per

month for six months, and reduction to airman basic.

On appeal, he argues that the marijuana obtained by the security police was the fruit of an illegal search and thus inadmissible as evidence.

## I

The issue arose on these facts: Deputy Sheriff Duke of the Hillsborough County, Florida sheriff's department planned to repossess the accused's 1978 Camaro automobile on MacDill Air Force Base under a court-authorized writ of replevin. Following normal routine, Sheriff Duke secured the aid of the MacDill security police to accompany him since Duke lacked jurisdiction on base. Duke served the writ and secured the accused's car keys.

To protect the car owner and the wrecker-driver who hauls the vehicle away, sheriff's department internal policy requires an inventory of all items normally found in a repossessed car. Such an inventory occurred here. It extended to such interior items as a cigarette lighter, tape deck, and condition inside the car but not the closed center-console area. The security policeman accompanying Sheriff Duke was present for the inventory but did not assist.

In addition, as a courtesy, the sheriff's department generally permits non-hostile parties to remove their personalty from vehicles being repossessed. This too occurred, and the accused began to remove his belongings from the car. At one point, the accused departed the area of the car and headed for an adjacent building with a box of his possessions. Thinking that the accused had completed removing everything from the car, the security policeman noticed a piece of plastic sticking out of the center console. Unsolicited, he reached into the car, opened the console, and thereupon discovered the baggie of marijuana in question. He explained that when he first saw the plastic, it held no special meaning for him:

I thought maybe [the accused] had forgotten to get something out of the vehicle. When he came back out I was going to tell him, Hey, you left this in there. The accused was then apprehended by military authorities.

At trial, the defense objected to introduction of the bag of marijuana as the product of an illegal search. The accused, testifying on his own behalf, recounted that there was quite a bit of personalty still to be removed from the car but, before he could remove everything, many military police appeared; the overseeing security policeman then reached into the center console and seized the marijuana.

## II

■ At trial, the military judge ruled that the marijuana found was admissible since the accused could have no reasonable expectation of privacy in this situation. We concur. Title to the vehicle had passed from the accused, and his expectation of privacy must be considered minimal at best. Accordingly, we find that the military judge did not err in so ruling.

## III

■ However, we do not premise our ruling on that basis alone. We also find that, on the entire record, the marijuana was obtained during an inventory search which was reasonable under the Fourth Amendment. Hence, the results of that inventory were admissible.

This issue, involving the admissibility of evidence discovered during a civilian vehicle inventory, is one of first impression for this Court; perhaps no other search and seizure issue arising under the Fourth Amendment has caused greater difficulty in reconciling societal and law enforcement interests with individual privacy expectations.[1]

We believe that the holding of the United States Supreme Court in *South Dakota v.*

1. Comment, *The Auto Inventory Search and Cady v. Dombrowski*, 20 Villanova L.Rev. 147 (Nov. 1974).

*Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) is apposite. In *Opperman*, the defendant's car was impounded after multiple parking violations. Police then inventoried the car's contents and found a plastic bag of marijuana in the unlocked glove compartment. The Court held that this was not an unreasonable search under the Fourth Amendment. The Court reasoned that an owner's expectation of privacy in an automobile is significantly less than would be true of a home or office. Furthermore, the police indisputably were engaged in a caretaking inventory of a lawfully impounded vehicle. Moreover, there was no suggestion whatsoever that their standard procedure was a pretext concealing an investigatory police motive. On the overall record, said the Court, the conduct of the police was not unreasonable under the Fourth Amendment.[2] *See also, Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968) and *Cooper v. California*, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967).[3]

*Opperman, Harris,* and *Cooper* fail to furnish a simple, concrete standard by which to judge the reasonableness of vehicle inventory searches. Ultimately, no ready test exists, other than balancing the need to search against the invasion which that search entails.[4]

## IV

In striking such a balance, we note two main factual differences between *Opperman* and the present case: (1) the action triggering police activity here was civil, rather than criminal;[5] and (2) the marijuana seized came into the hands of the Air Force through a third party to the original transaction—a security policeman who accompanied the sheriff as he repossessed and inventoried the car.[6]

We do not consider these factual differences to require a different end result from that in *Opperman.* Indeed, these factors make an even stronger case for holding the search permissible—the two factors tend to negate any thought that the participating police were, *sub rosa,* searching for evidence. Furthermore, the fact that the mili-

2. The Court found "probable cause" singularly unhelpful as a litmus test in this area: "The probable-cause approach is unhelpful when analysis centers upon the reasonableness of routine administrative caretaking functions, particularly when no claim is made that the protective procedures are a subterfuge for criminal investigators." *South Dakota v. Opperman,* 428 U.S. 370, n. 5, 96 S.Ct. 3097, n. 5; the Court further noted that appellate courts have differed as to whether an inventory is or is not a search for Fourth Amendment purposes. *Id.* at fn. 6 . See generally Annot., Lawfulness of "Inventory Search" of Motor Vehicle Impounded by Police, 48 A.L.R.3d 537, 549–550 (1973).

3. *Harris v. United States,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968) involved the police warrantless search of an impounded car; auto registration, in plain view, ultimately was used as evidence against the defendant; the Court held the evidence subject to seizure, despite absence of a warrant. In *Cooper v. California,* 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967), police found a piece of brown paper in the glove compartment of a car which had been impounded under a state forfeiture procedure dealing with narcotics violations; the brown paper matched similar paper in which heroin had been wrapped and sold to an informer. The Court held that the police did not violate the Fourth Amendment by this seizure. Representative post-*Opperman* cases include *United States v. Leonard,* 630 F.2d 789, 791 (10th Cir. 1980); *United States v. Smith,* 621 F.2d 483, 488 (2nd Cir. 1980); *United States v. Staller,* 616 F.2d 1284, 1289–1290, (5th Cir. 1980); and *United States v. Prescott,* 599 F.2d 103, 105 (5th Cir. 1979).

4. Cook, *Automobile Inventories and the Fourth Amendment; South Dakota v. Opperman,* 38 Ohio St.L.J. 117 (1977).

5. Few, if any, cases have been found in which civil, rather than criminal, action sets events into motion. The nearest cases "on all fours" vis-a-vis civil rather than criminal conduct appear to be *Capps v. Tennessee,* Tenn., 505 S.W.2d 727 (1974) and *Denson v. State,* 128 Ga.App. 456, 197 S.E.2d 156 (1973).

6. See *State v. Patterson,* 8 Wash.App. 177, 504 P.2d 1197 (1973); this appears to be the sole reported case wherein a third party to the original transaction finds the object ultimately seized. In this case, a tow truck was called to haul off an impounded car; the truck driver, entering the driver's seat, found drugs. Despite defense objections, the evidence was held admissible.

tary policeman who found the marijuana was not the inventorying official does not detain us long. He was on the scene as much to protect the rights of the accused as those of the sheriff, and his actions were reasonable when measured by the yardstick of *Opperman.* See *State v. Patterson,* 8 Wash.App. 177, 504 P.2d 1197 (1973) and *Capps v. Tennessee,* Tenn., 505 S.W.2d 727 (1974).

■ Balancing the accused's expectation of individual privacy against governmental and societal interests, we are convinced in light of *Opperman* that the seizure of the baggie of marijuana in the accused's car was reasonable.[7] In particular, we believe the following facts buttress its reasonableness: (1) the sheriff was obligated by his police procedure to inventory the contents of the repossessed vehicle; (2) the State was in lawful custody of the automobile; (3) unlocked glove compartments, consoles, and the like are places where an owner might reasonably be expected to keep personal effects of value; (4) the discovery of marijuana apparently was inadvertent, coming as a genuine surprise to the security policeman involved; (6) since title to the car had passed from the accused, his possessory interest and expectation of privacy must, at best, be considered minimal; and, (7) the security policeman was not working for the State during that Sovereign's caretaking inventory process.

Based on all these factors and on the record as a whole, we find the search of the vehicle's center console—a place where an owner might reasonably be expected to keep personal effects of value—permissible. Consequently, we find the resultant seizure lawful. *United States v. Purite,* 3 M.J. 978, fn. 5 (A.F.C.M.R.1977); *State v. Prober,* 98 Wis.2d 345, 297 N.W.2d 1, n. 6 (1980); *see also Capps v. Tennessee, supra* and *United States v. Talbert,* 10 M.J. 539 (A.C.M.R. 1980).

We have considered the other issue raised by appellate defense counsel and resolve it adversely to the accused.

The findings of guilty and the sentence are

AFFIRMED.

EARLY, Chief Judge, and MILES, Judge, concur.

---

7. The issue is not without inherent difficulties, and the Supreme Court's opinion in *Opperman* has been severely criticized by some. The main points made by the critics are these: (1) Why does custody of a motor vehicle give sufficient justification for a follow-on search—cannot the police protect without examining the contents? See Comment, note 1, *supra.* (2) The seizure was held justifiable in *Opperman* because it conformed to police standard operating procedures; yet does that—in itself—make the inventory reasonable? The Court appears to assume that police SOPs negate the possibility that officers were, *sub rosa,* searching for evidence. Quaere, if the procedure is legitimate, why is the policeman's motivation at all relevant? *Ibid.* (3) Are not most "inventories" really a subterfuge? Not one specific case of police liability for goods left in a car has been found. *State v. Gwinn,* Del., 301 A.2d 291, 294 (1973). Yet fear of subsequent police liability is a recurring justification to justify an inventory. See Comment, note 1, *supra,* at pp. 158–159. (4) Is not the argument frivolous that an inventory is necessary to protect the public from a firearm or contraband drugs? See La Fave, *Search and Seizure,* § 7.4, pp. 565, 572, wherein the author finds that the protection-of-the-public argument "borders on the ridiculous." (5) Finally, although not applicable on the present facts, in the common situation where the owner is present, should he not be allowed to elect whether he prefers the security which might result from the inventory or, to the contrary, the privacy which results from no inventory? *Id.* at § 7.4, p. 570. See generally Baker and Khouri, *Improbable Cause—The Poisonous Fruit of a Search After Arrest for a Traffic Violation,* 25 Okla.L.Rev. 54, 63 (1972) and Note, *Search and Seizure—Fruits of Warrantless Automobile Inventory Searches Admissible,* 60 Marquette L.Rev. 569, 589 (1977).