IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

DECEMBER 1999 SESSION

**FILED**

March 6, 2000

Cecil Crowson, Jr.
Appellate Court Clerk



JOHNNY RUTHERFORD,                    )
                                      )
            Appellant,                )         No.  E1999-00932-CCA-R3-PC
                                      )
                                      )          Anderson County
v.                                    )
                                      )         Honorable James B. Scott, Jr., Judge
                                      )
STATE OF TENNESSEE,                   )         (Post-Conviction: Armed Robbery, Aggravated
                                      )         Kidnapping, and Aggravated Rape)
            Appellee.                 )


For the Appellant:                              For the Appellee:

Johnny Rutherford, <u>Pro</u> <u>Se</u>                     Paul G. Summers
NECXU09-00114033                                Attorney General of Tennessee
Northeast Correctional Complex                        and
Post Office Box 5000                            Ellen H. Pollack
Mountain City, Tennessee 38583                  Assistant Attorney General of Tennessee
                                                425 Fifth Avenue North
                                                Nashville, TN 37243

                                                James N. Ramsey
                                                District Attorney General
                                                      and
                                                Janice G. Hicks
                                                Assistant District Attorney General
                                                127 Anderson County Courthouse
                                                100 North Main Street
                                                Clinton, Tennessee 37716


OPINION FILED:_____


AFFIRMED

Joseph M. Tipton
Judge


# O P I N I O N


        The petitioner, Johnny Rutherford, appeals as of right the Anderson

County Criminal Court's denial of his petition for post-conviction relief.  He seeks relief

from his 1986 convictions for armed robbery, aggravated kidnapping, and aggravated rape. He was sentenced as a habitual offender to concurrent life sentences for the armed robbery and aggravated rape convictions. He received a forty-year sentence for the aggravated kidnapping conviction, which is consecutive to the life sentences. This court affirmed the convictions for armed robbery, aggravated kidnapping, and aggravated rape on direct appeal but vacated an escape conviction. State v. Johnny Rutherford, No. 176, Anderson County (Tenn. Crim. App. Mar. 15, 1988), app. denied (Tenn. May 31, 1988).

In this appeal, the petitioner contends that he received the ineffective assistance of counsel because his attorney:

(1) failed to challenge the warrantless seizure of blood-stained carpet from his car;

(2) failed to challenge false statements in the affidavit supporting the search warrant for his blood sample;

(3) failed to challenge the chain of custody of the body specimens before trial or to preserve this issue for appeal;

(4) failed to object to improper judicial conduct;

(5) failed to object to a constructive amendment of the indictment during the jury charge;

(6) failed to request the trial court to instruct the jury on the lesser included offenses of aggravated rape and aggravated kidnapping and the definitions of "intentionally" and "knowingly"; and,

(7) failed to object to the trial court's instruction that no two sets of fingerprints are alike.

The petitioner requests a remand based upon the trial court's failure to make factual findings and legal conclusions on two additional claims of ineffective assistance of counsel:

(1) that his attorney failed to argue the search and seizure issue effectively and

(2) that his attorney failed to challenge an officer's testimony regarding tire prints.

The petitioner also contends that the trial court erred in denying his request for funds for a DNA test. We affirm the denial of post-conviction relief.

The petitioner filed a pro se petition on March 3, 1991, which was amended by appointed counsel. Following an evidentiary hearing on November 19,

2

1992, the trial court denied the petition, finding that most of the petitioner's issues were previously determined on direct appeal, that proof of the petitioner's identity was overwhelming, and that the petitioner's attorney exercised reasonable skill and diligence. This court reversed and remanded the case for another evidentiary hearing to allow the petitioner to present additional witnesses and to permit the trial court to make additional factual findings. Johnny Rutherford v. State, No. 03C01-9306-CR-00186, Anderson County (Tenn. Crim. App. Dec. 6, 1994). After the second evidentiary hearing on November 4, 1996, the trial court denied the petition.

The following account of the facts appears in this court's opinion in the direct appeal:

[A]t 2 a.m. on the day in question, the victim was working the late shift at the Git 'n Go convenience market in Clinton, Anderson County. A male entered. He presented a revolver. He had a brown and orange ski mask over his head. He shook his gun at her and said, "You know what I want." She gave him the available money and eight $1 food stamp coupons.

Not satisfied with the money, he forced her at gunpoint to accompany him to his car parked a short distance away. After practically stuffing her into his car, he drove for about one-half hour, stopping at a deserted area. He forcibly penetrated her vaginally while threatening her with anal penetration as well as fellatio. He displayed two handguns during the encounter.

On the return trip he released her; she fled to the nearest house, from which the police were called. She described the vehicle of her abductor as "dark in color", "old and large", with a "spider-web" like crack in its windshield. She told authorities that two "clutch pin keepers" fell into the seat of the car after her assailant had yanked the name tag from her smock.

A short time later, officers observed a car fitting the description and followed it. They noticed that its license plate was not plainly visible. Additionally, the car was weaving across the road. They stopped the car. The defendant, the sole occupant, was removed from the car, searched, and placed in the police vehicle. The officers recovered from defendant an amount of currency which nearly matched the denominational description of the money taken from the victim. A quick "once over" of the vehicle yielded eight $1 food stamp coupons, a quantity of .38 caliber and .22 caliber cartridges. Two "clutch pin keepers" such as would be used to attach a name tag were found in the fold of the front seat.

The investigation continued, aided somewhat by a light dusting of snow which made the tire tracks left by the vehicle easy to follow. Along the route taken by the abductor's vehicle, Officer Humphrey recovered a flashlantern, a brown and orange ski mask, a brown paper bag, a .22 caliber pistol, a .38 caliber pistol, and a dark jacket, each of which was identified

3

by the victim as being similar to those which she had observed the assailant wear or use on the night in question.

The victim was transported to an emergency medical facility for examination and treatment. Personnel there observed bruises and scratches on the inner portion of the victim's thighs as well as on her forehead. Also visible to them was a cut on her toe. They described her as "tearful and upset."

A fingerprint expert compared a latent print lifted from the flashlantern battery to the known prints of the defendant. He found 12 points of comparison, concluding therefrom that the prints on the flashlantern battery were those of the defendant.

A forensic serologist testified that a comparison of body fluids obtained from the defendant and the victim indicated that the victim has ABO type A blood, and her body produces the A and H antigens only. On the other hand, the defendant has ABO type AB blood, and his body produces the B antigen only. His investigation found the presence of the B antigen in the victim's fluids, concluding therefrom that the B antigen in her fluids was deposited by a person with ABO type AB or B blood.

In his statement to the police on February 13, defendant said that after drinking at home, he left Knoxville at about 11:00, drove to Clinton via Oak Ridge, and went to a Moore Street address to meet someone. Failing to find that person, he drove toward Lake City.

The defendant's wife testified that she was with him from 10 p.m. on the night in question until 2:00 or 2:30 the next morning. She said that the "clutch pin keepers" recovered in the car could belong to her children.

Kathy Copock, a neighbor whose trailer home is within view of the defendant's trailer home testified that she saw the defendant at 2 a.m. on the morning in question.

Defendant's step daughter, Angie Wilson, testified that she saw the defendant at 2:15 a.m. on the morning in question.

As a witness in his own behalf, the defendant swore that he left his trailer "around 2:30, sat on the side of the river for a while . . . and then went from there to Lake City and that's where I got stopped." He explained that the "clutch pin keepers" probably belonged to his daughter, and that the flashlantern was in his car when it was impounded by the police.

He admitted to having seen the victim in the convenience store on prior occasions, but denied that he robbed, abducted, or raped her.

State v. Johnny Rutherford, slip op. at 2-5.

At the November 19, 1992, post-conviction evidentiary hearing, the petitioner's attorney testified that he represented the petitioner at trial and on direct appeal. He said that he met with the petitioner twenty to thirty times. He said that on

4

four or five occasions, he discussed plea options with the petitioner. He said it was possible that only two of the meetings lasted for forty-five minutes or more, but he doubted it. He said he believed the state's case was weaker at trial than he had anticipated it would be because the victim's testimony was tentative, but the state's case remained circumstantially strong. He stated that the state had ten to fifteen pieces of circumstantial physical evidence that indicated either the petitioner or his car were present at the robbery. He said he presented an alibi defense that the petitioner had a domestic dispute with his wife at the trailer park, took a drive to cool off, and barely had time to arrive at the place where the police stopped him. He agreed that the petitioner's conviction rested on legal and constitutional issues decided in the motion to suppress evidence from the petitioner's car.

The attorney testified that at the pretrial suppression hearing, he argued that the police did not have probable cause to stop the petitioner's car. He said that on the night of the incident, two officers stopped the petitioner, placed him in the back of the patrol car, and searched his car. He said the officers testified that they did not consider the petitioner to be under arrest at this point but that he was not free to go. He said that he tried to stress the problems with the timing of the search at the suppression hearing. He said the trial court ruled that probable cause to stop and search existed because the officers could have charged the petitioner with driving under the influence of an intoxicant (DUI).

The attorney agreed that the affidavit supporting the search warrant for the petitioner's blood sample stated that the victim had identified the petitioner by his voice. He said that this voice identification was not substantiated by the victim's testimony at trial.

The attorney testified that fingerprints were taken from a battery inside a flashlight found by investigating officers on the morning of the crime. He stated that he did not see an enlarged photograph of the fingerprints or a comparison of the fingerprints from the battery with those of the petitioner. He said he only had the opinion of the state's fingerprint expert. He said that the expert did not bring the photographs to trial. He said he did not have funds to hire his own fingerprint expert.

5

The attorney testified that he did not know if a break in the chain of custody for the rape kit existed. He said he did not remember the petitioner asking him to subpoena an inmate who worked in the jail kitchen and who purportedly could testify that the rape kit was kept in the jail's refrigerator.

At the first hearing, the petitioner testified that he was incarcerated for eleven months after his arrest in this case. He said he saw his initial attorney three times before and during his preliminary hearing. The petitioner said that after his trial attorney was appointed, he spoke to his trial attorney a number of times when the attorney was at the jail visiting other inmates, but his attorney only came to see him twice. He said the state's evidence should have been used against someone else.

At the second evidentiary hearing on November 4, 1996, the petitioner's attorney testified that he did not remember if he objected specifically to the removal of the blood-stained carpet from the petitioner's car. He said he filed an objection to everything taken from the petitioner's car based upon the warrantless search of his car. He said he remembered challenging the affidavit to the search warrant for the petitioner's blood sample. He said he objected to an amendment of the escape indictment at trial, but he did not recall having any problems with the judge's instructions to the jury. He said he informed the petitioner of his habitual offender status. He said they knew the petitioner was risking a life sentence with any felony conviction. He stated that he did not ask the judge to charge any lesser included offenses because he did not want to create the possibility of a compromise verdict.

Mark Wills testified that he was a patrol officer with the Lake City Police Department in 1986. He said he did not recall having a manual on policies and procedures for stops and searches. He said he normally would notify the dispatcher when he was stopping someone, but he did not remember if he did so in the petitioner's case. He said that on the night of the incident, he stopped the petitioner's car close to the time that he received a dispatch to be on the lookout for a dark, older-model car. He agreed that the stop of the petitioner went from being a traffic stop to an investigatory stop because his focus for stopping the petitioner turned from the petitioner's license plate to the dispatch information. He said he assisted in the search

6

of the petitioner's car after the petitioner was placed in the patrol car. He said he did not get authorization from a supervisor before searching the car. He said he thought that one of the officers searched the petitioner's trunk. He agreed that the petitioner could not have reached a weapon, destroyed any evidence, or driven away in the car during the search. He said that officers arrested the petitioner at the scene and took him to jail.

Officer Danny Humphrey of the Anderson County Sheriff's Department testified that he arrived on the scene only minutes after officers stopped the petitioner's car. He said he searched the car based upon the traffic stop and found clutch pin keepers in the crease of the front seat. He said he did not inventory the car nor did he have a search warrant. He said that he would normally search for a weapon, but he did not remember if he had been searching for one in this case. He agreed that he testified at the preliminary hearing that he was searching for evidence. He said he did not remember if the food stamps were found in the petitioner's car or shirt. He said he later found some clothing, including a ski mask, at an area called the "turkey shoot." He said he did not remember talking to the victim or giving information to Officer Scarboro to be used to obtain a search warrant for the petitioner's blood sample.

Officer Humphrey testified that he brought the tires from the petitioner's car to trial. He said that the tires were evidence and that he did not have a search warrant to remove them from the car. He said he brought the tires to court in order to compare them to photographs of tire prints. He said that his only training in identifying tire prints occurred at the police academy in 1983.

Officer Dorman Scarboro testified that he vaguely remembered investigating the kidnapping and rape of the victim on February 13, 1986. He stated that he did not recall getting the search warrant for the petitioner's blood sample. He said he did not know if the petitioner had been in the victim's presence before he signed the affidavit. He said that if he had stated in the affidavit that the victim identified the petitioner as the perpetrator of the crimes, then it was true. He said he was not aware that the victim did not identify her assailant in her statements and testimony. He said he was sure that the judge who signed the search warrant had questioned him

regarding the affidavit. He said he told the truth when he signed the affidavit in front of the judge.

Richard Foschino testified that in February 1986, he was a detective with the Anderson County Sheriff's Department. He said that although Lake City officers stopped the petitioner, he was in charge of the investigation. He said the Clinton Chief of Police sent him evidence in the case, which he sent to the Tennessee Bureau of Investigation (TBI), but he did not recall what type of evidence this was. He said he normally prepared the evidence for the TBI lab. He stated that he stored blood evidence and rape kits in a locked refrigerator in the kitchen at the courthouse. He said that only he, the Sheriff, and maybe another investigator had keys to the refrigerator. He said that if an inmate trustee said he saw evidence in the refrigerator, then the trustee was wrong. He said he would have been able to tell if someone had tampered with the lock.

Detective Foschino testified that he remembered the carpet being removed from the petitioner's car but that he did not remember if he removed it or watched someone else remove it. He agreed that the petitioner was in jail at the time the carpet was removed and therefore could not harm the officers or destroy the evidence. Detective Foschino said he assumed that he would have been looking for evidence in the car. He stated that he might have been taking photographs of the car. Following the evidentiary hearing, the trial court found that the petitioner failed to show either deficiency or prejudice and denied the petition for post-conviction relief.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

The petitioner contends that he received the ineffective assistance of counsel. When a claim of ineffective assistance of counsel is made under the Sixth Amendment, the burden is upon the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993). The Strickland standard has been applied to the right to counsel under Article I,

8

Section 9 of the Tennessee Constitution.  State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court held that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases.  Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974) and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973).  Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

We also note that the approach to the issue of the ineffective assistance of counsel does not have to start with an analysis of an attorney's conduct.  If prejudice is not shown, we need not seek to determine the validity of the allegations about deficient performance.  Strickland, 466 U.S. at 697, 104 S. Ct. at 2069.

The petitioner must show both deficiency and prejudice by a preponderance of the evidence.[1]  See Brooks v. State, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988).  Since the creation of post-conviction procedures, the findings of the trial court in a post-conviction case have been given the weight of a jury verdict.  See Janow v. State, 4 Tenn. Crim. App. 195, 200, 470 S.W.2d 19, 21 (1971).  Our long-standing standard of review on appeal bound us to the trial court's findings of fact unless we concluded that the evidence preponderated against those findings.  Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990).  Our traditional standard prevented us from reweighing or reevaluating the evidence, or substituting our own inferences for those drawn by the trial court.  Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997) (reviewing the issue of the ineffective assistance of counsel).  Questions

---

[1]For post-conviction petitions filed after May 10, 1995, petitioners have the burden of proving factual allegations by clear and convincing evidence.  Tenn. Code Ann. § 40-30-210(f).

9

concerning the credibility of witnesses and the weight and value to be given to their testimony were resolved by the trial court, not this court. <u>Id.</u> This court has held that it would give due deference to the trial court's findings regarding the ineffective assistance of counsel under the well-settled standard set forth in <u>Henley</u>. <u>Richard C. Taylor v. State</u>, No. 01C01-9707-CC-00384, Williamson County, slip op. at 26 (Tenn. Crim. App. July 21, 1999).

While reaffirming the <u>Henley</u> standard for purely factual issues, our supreme court recently stated that "the issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact" requiring a <u>de novo</u> review by this court. <u>State v. Burns</u>, 6 S.W.3d 453, 461 (Tenn. 1999). We do not believe that the supreme court intended in one sentence, without further discussion, to overrule <u>sub</u> <u>silentio</u> over thirty years of jurisprudence regarding the standard of review in post-conviction cases. Thus, we believe that the standard of review remains whether the evidence preponderates against the trial court's finding that the petitioner received the effective assistance of counsel. In any event, we believe that either standard yields the same result in this case.

### 1. Blood-Stained Carpet

The petitioner contends that his attorney was ineffective for failing to challenge and appeal the warrantless removal of blood-stained carpet from the petitioner's car after the Anderson County Sheriff's Department impounded the car. He states that the Sheriff's Department impounded his car and inventoried its contents, searched the car and dusted for fingerprints on another occasion, and removed a piece of carpet on a third occasion, all without a search warrant. He argues that his attorney failed to object to the state's use of the blood-stained carpet at trial. Alternatively, the petitioner argues that even if his attorney objected to the warrantless search and seizure of evidence from his car, his attorney did not cross-examine the officer who conducted the warrantless search of the car. He claims that this relieved the state of its burden of proving that the seizure of the carpet fell within the inventory exception to the warrant requirement. He also argues that his attorney failed to address this issue in his direct appeal. The state contends that the issue of the warrantless seizure of evidence from the petitioner's car has been previously determined on direct appeal.

10

The trial court found that the trial attorney raised the issue of the blood-stained carpet and that it was fully addressed in the pretrial suppression hearing. The court also found that this court reviewed the issue on direct appeal and affirmed the admissibility of the evidence. The court found that the petitioner had produced no additional evidence to support his contentions.

The issue of whether the carpet should have been suppressed was previously determined on direct appeal. Tenn. Code Ann. § 40-30-112(a) (repealed 1995). With regard to the initial stop of the petitioner, this court held on direct appeal:

> Two Lake City officers observed that defendant's automobile matched the description of the perpetrator's. It was weaving as though the driver was intoxicated, and the license plate was not readable. These observations were sufficient to justify the initial stop. After the stop, the officers observed other things in and about the automobile (the windshield was cracked, as described by the victim, pistol cartridges were observed in the back of the automobile) which furnished them with probable cause to arrest the defendant and to search incident to the arrest.

State v. Johnny Rutherford, slip op. at 10 (citations omitted). The court noted that the petitioner's detention in the back of the patrol car constituted an arrest. Id. at 11. The court also held:

> In his motion to suppress defendant also challenges the warrantless search and seizure of items from the automobile after it had been impounded. The initial search incident to defendant's arrest was proper and therefore the subsequent search at the impound lot was also proper, because the justification to conduct such a warrantless search did not vanish once the car had been immobilized. Florida v. Meyers, 466 U.S. 380, [382, 104 S. Ct. 1852, 1853] (1984); Capps v. State, 505 S.W.2d 727 (Tenn. 1974).

Id. Thus, this court's opinion on direct appeal confirms the trial court's finding that the attorney raised the issue of the blood-stained carpet at the suppression hearing and on appeal.

The petitioner has also failed to show how he was prejudiced by his attorney's decision not to cross-examine Detective Foschino. Detective Foschino either removed the carpet from the petitioner's car or was present when another officer removed it at the impound lot. Once the state established that the initial search was proper, then the subsequent searches of the impounded car were also proper. Officer Foschino was not present when the petitioner was stopped or at the initial search. His

11

testimony could reveal nothing about the propriety of the initial search. Thus, the petitioner suffered no prejudice as a result of his attorney's decision not to cross-examine Officer Foschino.

The petitioner argues that his attorney was ineffective for not requiring the state to show that it had reasonable cause to impound the petitioner's car. The "routine inventory search of an automobile lawfully impounded" is an exception to the warrant requirement. South Dakota v. Opperman, 428 U.S. 364, 365, 96 S. Ct. 3092, 3095 (1976). The inventory search pursuant to a lawful impoundment is justified by the need to protect the owner's property while in police custody, the need to protect police against claims of lost property, and the need to protect police from potential danger. Opperman, 428 U.S. at 369, 96 S. Ct. at 3097. Our supreme court has delineated guidelines for determining whether an impoundment is lawful, and thus, a subsequent inventory search valid. Drinkard v. State, 584 S.W.2d 650, 653 (Tenn. 1979). In Drinkard, the court stated that:

> [I]f the circumstances that bring the automobile to the attention of the police in the first place are such that the driver, even though arrested, is able to make his or her own arrangements for the custody of the vehicle, or if the vehicle can be parked and locked without obstructing traffic or endangering the public, the police should permit the action to be taken rather than impound the car against the will of the driver and then search it. Just cause to arrest the driver is not, alone, enough; there must be reasonable cause to take his vehicle into custody.

Id. The burden of proving the propriety of the impoundment and subsequent search rests with the party seeking to introduce the fruits of the search. Id. (citation omitted). The petitioner contends that no evidence exists that he was given the opportunity to make other arrangements for the custody of his car. He also claims that no evidence exists regarding whether he could have parked and locked his car without obstructing traffic or endangering the public.

We believe that the issue of whether the carpet seized from the car should have been suppressed does not turn on the reasonableness of the impoundment. The validity of the warrantless searches of the car at the impound lot stems from the lawful search of the car incident to the petitioner's arrest, not from a prior inventory search. Furthermore, despite the officers' failure to consult the petitioner

12

about an alternative to impoundment, the impoundment appears reasonable and necessary. No one was present at the scene to take control of the car. The petitioner, the car's sole occupant, had been arrested and taken to jail. Additionally, the presence of snow on the roads and the earliness of the hour do not suggest that it was safe to leave the car parked along the side of the road. The petitioner has not shown that he was prejudiced by his attorney's failure to explore the propriety of the impoundment.

## 2. False Statements in Affidavit

The petitioner contends that his attorney was ineffective for not seeking the suppression of his blood sample, which he claims was obtained with a search warrant based upon an affidavit containing false statements. He asserts that the affidavit falsely states that the victim identified him by his voice in the affiant's presence, that food stamps taken in the robbery were found on his person, and that the victim could identify the food stamps as those taken in the robbery. He also argues that the use of his name in the affidavit falsely indicates that the victim identified him as the perpetrator of the crimes. He contends that the remaining statements in the affidavit do not provide probable cause to issue the warrant. The state contends that the petitioner has failed to show prejudice because a search warrant would have been forthcoming based upon the circumstantial evidence of the petitioner's guilt that the police had at the time the warrant was issued.

The petitioner's attorney read the affidavit into evidence at the first evidentiary hearing:

> [The victim] who was a clerk at the [Git]-N-Go market in Anderson County told affiant that Johnny Rutherford came into the store at 2:00 a.m. on Friday, [February] 13th, 1986, and forced her to give him the store's cash and food stamps by threatening her with a gun. And he then kidnapped her and raped her at gunpoint. [The victim] stated that Rutherford wore a ski mask, and she can identify Johnny Rutherford by his voice and has done so in the presence of affiant. . . . .
>
> Officer Humphreys of the Anderson County Sheriff's Department told affiant he recovered a ski mask about one and a half miles from the scene of the rape. [The victim] has identified this as the mask worn by the robber/kidnapper/rapist.
>
> [The victim] has furnished blood and saliva, hair and vaginal specimens to the police. The TBI crime laboratory in Nashville has told affiant and other officers that the laboratory, upon receiving such samples from rape victims, can make a determination within a reasonable degree of probability [on] the

> identity of the rapist if they receive hair, saliva and blood samples from a suspect. Johnny Rutherford has voluntarily supplied pubic hair samplings [sic] to officers but refused to supply other specimens.
>
> Food stamps identified by the victim as taken in the robbery, found by Officer Humphreys on Johnny Rutherford's possession or person–[(the attorney interjects that he cannot read this word)–a]t approximately 3:40 a.m., according to what Officer Humphreys told me, Affiant, DJS.

Officer Dorman Scarboro testified that he was the affiant.

The trial court found that the attorney objected to the affidavit to the search warrant for the petitioner's blood sample on the morning of the trial, but it ruled that his objection came too late. The court found the record to be devoid of evidence that the voice identification statement is false. It noted that on the morning of the trial, the petitioner's attorney argued that at the preliminary hearing, the victim testified that she could not recognize the petitioner's voice. Noting that the attorney did not represent the petitioner at the time of the preliminary hearing, the trial court found his statement to be hearsay. The court found that the record contained no evidence from the victim about identifying the petitioner in person. It found that Officer Scarboro had no independent recollection of the facts in the affidavit. The court concluded that the warrant was valid on its face regarding the voice identification. With regard to the food stamps, the court found:

> There is a statement in the search warrant that the food stamps were found on the person of the [petitioner] when the proof is that the food stamps were found over the sun visor in the vehicle. The petitioner was arrested in the vehicle and the petitioner claims that the food stamps belonged to his wife. The fact that the food stamps were found in the vehicle occupied by the petitioner instead of being on his person appears to this Court to be a minor misstatement and would not diminish . . . the determination of probable cause.

The court found that the petitioner was not prejudiced by the attorney's failure to file a motion to suppress the blood sample.

Our supreme court has defined two situations in which false information within the supporting affidavit requires the application of the exclusionary rule despite the affidavit's facial sufficiency:

> (1) a false statement made with intent to deceive the Court, whether material or immaterial to the issue of probable cause, and

14

> (2) a false statement, essential to the establishment of probable cause, recklessly made. Recklessness may be established by showing that a statement was false when made and that affiant did not have reasonable grounds for believing it, at that time.

State v. Little, 560 S.W.2d 403, 407 (Tenn. 1978). Thus, even an immaterial statement in the affidavit will result in exclusion of the evidence if the statement is intentionally false. However, negligence or innocent mistake is insufficient to justify exclusion. Id. at 406-07.

The record reveals that the petitioner's attorney filed a motion to reconsider suppression two days before the trial. This motion included the contention that the affidavit used to obtain the search warrant for the petitioner's blood sample falsely stated that the victim identified the petitioner by voice. The trial court denied the motion on the morning of trial, finding that the motion came too late for a hearing on the matter and that no sufficient reason to suppress the evidence existed at that time.

Our review of the victim's testimony at trial reveals that she did not mention whether she could at that time or had previously identified the petitioner by his voice. The victim was not asked at trial to identify the petitioner as the perpetrator. The preliminary hearing testimony was not officially recorded. The attorney testified at the evidentiary hearing that the petitioner's initial attorney taped the preliminary hearing and had his staff create a transcript. Even if the victim could not recognize the petitioner's voice at the preliminary hearing, this does not preclude the possibility that she was able to recognize his voice as that of her assailant at some earlier time. The petitioner has failed to show that the voice identification statement in the affidavit is false; therefore, he is not prejudiced by his attorney's failure to challenge the warrant at the suppression hearing. Furthermore, the petitioner is not prejudiced by the use of his name in the affidavit based upon the facial validity of the voice identification.

The record supports the trial court's finding that the officers found the food stamps in the petitioner's car rather than on his person. Although the victim could not identify the food stamps from the petitioner's car as the ones from the robbery, she did testify that she gave the perpetrator eight one-dollar food stamps from the register. This matched the amount and denomination of the food stamps found in the petitioner's

15

car.  The fact that the food stamps were in the car rather than on the petitioner is not material to the issue of probable cause when the petitioner had just stepped out of the car before his arrest.  The fact that the food stamps matched in number and denomination but had no other distinguishing features for the victim to identify is also immaterial.  Finally, the petitioner has made no showing that Officer Scarboro intentionally misstated these facts in the affidavit.  Thus, the petitioner is not prejudiced by the presence of these immaterial misstatements in the affidavit.

### 3.  Chain of Custody

The petitioner contends that his attorney was ineffective for failing to challenge the chain of custody of the rape kit and the petitioner's blood and saliva samples before trial or to preserve this issue for appeal.  He argues that the record does not reveal who had possession of this evidence between February 13, 1986, and February 19, 1986.  He claims that his attorney failed to subpoena an inmate trustee who could testify that he saw vials of blood, a rape kit, and other evidence stored openly in the refrigerator at the jail during this six-day period.  He states that the trustee died before the post-conviction evidentiary hearing.  He claims that if his attorney had raised this issue before trial, then the trial court would have suppressed the rape kit as well as his blood and saliva samples.  The state contends that the record reveals that the evidentiary specimens were properly delivered to the TBI laboratory for testing.  It also argues that even if the attorney should have challenged the chain of custody, his failure to do so is harmless in light of the overwhelming evidence of the petitioner's guilt.

The trial court found that both Deputy Edwin Kelly and Detective Richard Foschino delivered or mailed specimens to the TBI laboratory.  It found that no evidence existed that someone tampered with the specimens in question.  In the direct appeal, the petitioner's attorney argued that the state did not prove the chain of custody of a blood specimen, but the court could not review the matter because it could not determine which specimen was at issue.  State v. Johnny Rutherford, slip op. at 7.

16

At trial, Officer Dorman Scarboro testified that he gave blood and saliva samples taken from the petitioner to Detective Richard Foschino. Detective Foschino testified that he received the rape kit from Officer Penny Baker on February 13 and that he prepared it for the TBI laboratory. He said he received the petitioner's blood and saliva specimens from Officer Scarboro and prepared them for the TBI laboratory.

At the second evidentiary hearing, Detective Foschino testified that he sent some of the evidence from this case to the TBI laboratory, although he did not recall what type of evidence it was. He said that he normally prepared the evidence for the TBI laboratory and that he stored blood evidence and rape kits in a locked refrigerator in the kitchen at the courthouse. He said that he was one of three officers with a key to this refrigerator. He stated that presumably, he would have been able to tell if someone had tampered with the lock. He said that if an inmate trustee said that he saw evidence in the refrigerator, then the trustee was wrong. The petitioner's attorney testified that he did not remember the petitioner asking him to subpoena an inmate who worked in the jail kitchen who could supposedly testify that the rape kit was kept in the jail's refrigerator.

The record does not reflect a break in the chain of custody of the rape kit or the petitioner's blood and saliva samples, nor does it reflect that someone had tampered with these items. The proof of the identity of physical evidence does not have to exclude all possibility of tampering. Ritter v. State, 3 Tenn. Crim. App. 372, 378, 462 S.W.2d 247, 250 (Tenn. Crim. App. 1970). Instead, the "'circumstances need only establish reasonable assurance of the identity'" of the evidence. Id. (quoting Patterson v. State, 160 S.E.2d 815, 817 (Ga. 1968)); State v. Woods, 806 S.W.2d 205, 212 (Tenn. Crim. App. 1990). The petitioner does not allege that the trustee claimed to have seen the particular rape kit and specimens from this case in a refrigerator at the jail. The petitioner has failed to show prejudice.

#### 4. Improper Judicial Conduct

The petitioner contends that he received the ineffective assistance of counsel because his attorney failed to object to what he claims is improper judicial conduct at his trial. He summarily argues that the trial court commented on the evidence and questioned witnesses, bringing out points neglected by the state. The

17

petitioner argues that he was prejudiced because without the trial court's questions and comments, the state would not have presented sufficient evidence to convict him of the crimes. He also claims that because of their high regard for the trial judge, the jurors placed more weight on testimony when the judge requested that a witness repeat an answer or asked additional questions. The state contends that the petitioner has not cited to the record as required by Rule 27(a)(7), T.R.A.P., to indicate which of the trial court's questions or comments were prejudicial to his case. It further argues that the record does not support the petitioner's claim.

A trial court may ask questions of witnesses in order to clarify obscure points in the testimony or to supply omissions in the interest of justice. Collins v. State, 220 Tenn. 275, 278-79, 416 S.W.2d 766, 767 (1967); State v. Jenkins, 733 S.W.2d 528, 532 (Tenn. Crim. App. 1987). The trial court found that at the convicting trial, it questioned the victim in order to clarify certain points in her testimony because, despite numerous admonitions to speak up, she spoke too softly for the jury to hear her at times. Our review of the victim's testimony does not show otherwise. The trial court's questions and comments at the petitioner's trial were not improper. Therefore, the attorney's lack of objection was neither deficient nor improperly prejudicial.

### 5. Constructive Amendment of the Indictment

The petitioner contends that his attorney provided ineffective assistance by failing to object to the jury instruction on aggravated rape. He argues that when the trial court instructed the jury that aggravated rape could be proven if a deadly weapon were used or if the victim suffered personal injury, it constructively amended the indictment, which charged the use of a deadly weapon. The state contends that the attorney had no basis to object because the trial court properly instructed the jury on the relevant law.

The indictment states, in pertinent part, that on February 13, 1986, the petitioner did "unlawfully and feloniously engage in sexual penetration of [the victim], by use of fear and coercion and by use of a deadly weapon, to wit: a gun[.]" At the time of the offense and of the petitioner's trial, Tenn. Code Ann. § 39-2-603(a)(1) and (2) defined aggravated rape as:

18

the unlawful sexual penetration of a victim by a defendant or the unlawful sexual penetration of a defendant by a victim accompanied by any of the following circumstances:

(1) Force or coercion is used to accomplish the act and the defendant is armed with a weapon . . . [or]

(2) The defendant causes personal injury to the victim[.]

The trial court gave the following charge on aggravated rape:

For you to find the defendant guilty of [aggravated rape], the state must have proven, beyond a reasonable doubt, the existence of two essential elements:

(1) that the defendant had (unlawful) sexual penetration of the alleged victim; and

(2) that :(a) force or coercion was used to accomplish the act, and the defendant was armed with a weapon or any article used or fashioned in a manner to lead the alleged victim reasonably to believe it to be a weapon; or

(b) the defendant caused personal injury to the alleged victim; and force or coercion was used to accomplish the act.

The trial court found that the indictment was not amended and that it had correctly instructed the jury on the law at the time.

The trial court's "'instruction . . . should be limited to the precise offense alleged in the charging instrument to the exclusion of the remaining theories.'" State v. VanArsdale, 919 S.W.2d 626, 634 (Tenn. Crim. App. 1995) (quoting State v. Wayne E. Mitchell, No. 01C01-9209-CR-00295, Davidson County, slip op. at 6 (Tenn. Crim. App. Mar. 11, 1993)) (reversing based upon other grounds). In Wayne E. Mitchell, the state elected that it would prosecute on the count alleging aggravated rape committed with a deadly weapon. The trial court instructed the jury on the entire aggravated rape statute. Although this court noted that the instruction should be limited to the means of committing the offense as alleged in the indictment, we held that the verdict conformed to the indictment. Wayne E. Mitchell, slip op. at 6. This court also noted that "the balance of the instruction was mere surplusage" that did not affect the trial's outcome. Id.

In the present case, the jury returned a general verdict of guilty for the aggravated rape. Generally, we will affirm a general verdict of guilt if the indictment contains at least one proper count supported by the proof. Tenn. Code Ann. § 40-18-111. The petitioner has failed to show that the trial court's instruction on the alternate

19

theory of personal injury prejudiced him by affecting the outcome of the case. The trial court properly denied the petition on this ground.

## 6. Lesser Included Offenses and Definitions

The petitioner contends that his attorney was ineffective because he failed to request an instruction on the lesser included offenses of aggravated rape and aggravated kidnapping and on the definitions of "intentionally" and "knowingly." He argues that because the trial court charged the jury on robbery as well as armed robbery, it should have also charged rape and kidnapping in addition to aggravated rape and aggravated kidnapping. The state contends that no evidence existed that the petitioner was guilty of any lesser included offenses. It argues that the petitioner professed his innocence at trial; therefore, he was either guilty of the crimes as charged or not guilty.

The trial court has a duty to charge the jury on all lesser included offenses included in the indictment even if the defendant does not request it. Tenn. Code Ann. § 40-18-110. Although § 40-18-110 seems to require jury instructions on all lesser included offenses regardless of the proof in the record, our supreme court "has consistently required some factual basis for submitting an instruction on an included offense to the jury." Burns v. State, 6 S.W.3d 453, 467 (Tenn. 1999). In this respect, the evidence presented at the convicting trial did not warrant instructions on the lesser included offenses of rape and kidnapping.

At his trial, the petitioner denied robbing, abducting, or raping the victim. The victim testified that her assailant forced her from the convenience store and into his car at gunpoint. She stated that although he kept the gun in his pocket while he raped her, he reached for the gun to threaten her immediately preceding the rape when she refused to cooperate. Officer Danny Humphrey testified that he found two guns at the turkey shoot in a paper bag in a pile of clothing, which included a ski mask. He stated that he found a flashlight three or four feet away. The petitioner argues that because the guns were not found on his person, the jury could have disregarded the victim's uncorroborated testimony that her assailant used a gun. The fact that Officer Humphrey found the guns abandoned with other physical evidence from the crime does

20

not reasonably support the inference that a weapon was not used in the offenses. The petitioner has failed to point to any evidence that could support an instruction on the lesser included offenses.

The petitioner's trial attorney noted that the petitioner consistently maintained his innocence. The attorney testified that he did not ask the judge to charge any lesser included offenses because he did not want to create the possibility of a compromise verdict. The petitioner presents no argument as to how he was prejudiced by his attorney's failure to request the trial court to instruct the jury on the definitions of "knowingly" and "intentionally." The petitioner has failed to show both deficiency and prejudice.

### 7. Fingerprint Instruction

The petitioner contends that his attorney was ineffective for failing to object to the trial court's instruction that no two sets of fingerprints are alike. He argues that this statement intrudes upon the jury's deliberations, focuses the jury upon one isolated fact, creates an irrebuttable presumption that the petitioner is the perpetrator upon proof that the fingerprint was his, and relieves the state of its burden of proof on this issue. The state contends that the trial court's instruction followed Tennessee Pattern Instruction § 37.15 on fingerprints in effect at the time of the petitioner's trial. It further argues that the petitioner was not harmed by the instruction because the proof contains a significant amount of other evidence pointing to the petitioner's guilt.

The trial court instructed the jury on fingerprint evidence as follows:

Fingerprint evidence has been presented in this case. You may consider this evidence in determining the defendant's identity as the person who committed this crime.

Fingerprint evidence is circumstantial evidence; that is, it is proof of collateral facts and circumstances from which the existence of a primary fact may be deduced by you according to reason and common experience. There are no two sets of fingerprints exactly alike. For fingerprint evidence alone to sustain a conviction, you must find that the defendant's fingerprints could only have been impressed at the crime scene during the commission of the crime.

21

> The weight to be accorded fingerprint evidence is a question for the jury to decide in light of all the surrounding facts and circumstances of the case.

This instruction is identical to Tennessee Pattern Instruction § 37.15 (2d ed. 1988) and current Tennessee Pattern Instruction § 42.17 (4th ed. 1995).

We note that our supreme court has recognized that fingerprint evidence "is infallible because of its conclusiveness." Jamison v. State, 209 Tenn. 425, 434, 354 S.W.2d 252, 255 (1962) (holding that fingerprint evidence alone is sufficient to support a burglary conviction). The court based this conclusion upon expert testimony and its review of case law from which it determined that "all fingerprints that have ever been taken . . . run into an infinite number and no two have ever been found alike." Id. Thus, if the record contains no evidence that the fingerprint was innocently placed, fingerprint evidence alone may sustain the conviction. State v. Evans, 669 S.W.2d 708, 710 (Tenn. Crim. App. 1984); see State v. Cupp, 215 Tenn. 165, 171-72, 384 S.W.2d 34, 37 (1964).

We believe that the trial court's instruction to the jury that no two sets of fingerprints are alike is a statement of fact that improperly intrudes upon the province of the jury. See Tenn. Const., art. VI, § 9. This is so even if we view the statement as setting forth facts that could be judicially noticed. See Tenn. R. Evid. 201(g) ("In a criminal case, the court shall instruct the jury that it may, but is not required to, accept as conclusive any fact judicially noticed."). However, we do not believe that the petitioner is entitled to relief on this issue.

At the petitioner's trial, Donald R. Hampton, a latent fingerprint examiner from the Tennessee Bureau of Investigation, testified that he identified a fingerprint found on the flashlight battery as that of the petitioner. He stated that his identification contained no margin of error. He testified without contradiction that no two people, including identical twins, have the same fingerprints. In considering this testimony and the remaining evidence that connected the petitioner to the crime, we conclude that the petitioner has failed to show that he was prejudiced by the trial court's instruction.

## II. INSUFFICIENT FACTUAL FINDINGS AND LEGAL CONCLUSIONS

The petitioner contends that the trial court erred by failing to make factual findings and legal conclusions regarding two additional claims of ineffective assistance of counsel: that his attorney failed to argue the search and seizure issue and that the attorney failed to object to an officer's testimony on the tire prints. The petitioner asserts that Tenn. Code Ann. § 40-30-118(b) (repealed 1995), which controls this case, requires the court to make factual findings and legal conclusions with regard to each ground presented. The petitioner argues that this case must be remanded back to the trial court for findings on these two issues.

### 1. Search Issue

Contrary to the petitioner's contention, the trial court made the following findings regarding the petitioner's claim that his attorney failed to argue the search and seizure question:

> Petitioner reiterates the issue on the search question as to the search of the vehicle and the failure of the state to prove that the facts justified an exception to the search warrant [requirement]. This has been addressed fully in the original case [and] the original appeal and is not now subject to post conviction attack.

The validity of the warrantless search of the petitioner's car was previously determined on direct appeal. State v. Johnny Rutherford, slip op. at 10-11. This court held that the petitioner was arrested at the time he was detained in the back of the patrol car and that the warrantless search was a search incident to arrest. Id. The attorney challenged the search of the petitioner's car in a pretrial suppression hearing, renewed his motion to suppress on the morning of trial, and raised the suppression issue on appeal. No deficiency or prejudice exists.

### 2. Tire Print Testimony

The trial court does not address the petitioner's claim that his attorney failed to challenge an officer's testimony regarding tire prints being from the petitioner's car. Noting that the petitioner had filed several amended petitions, the court stated that it would address the petitions filed on February 19, 1996, and October 29, 1996. The court noted that the petitioner's Memorandum of Points and Authorities accompanying the February 19 petition states that "the petitioner has amended his petition for post-conviction relief, voluntarily dismissing all issues except those raised in the

23

accompanying petition." The petitioner first raised the issue of the tire print testimony in an Addendum to Memorandum on Points and Authorities filed on October 29, 1996.

The Post-Conviction Procedure Act in effect at the time the petitioner filed his original pro se petition prohibits the trial court from dismissing the petition for failure to follow proper procedures "until after the judge has given the petitioner reasonable opportunity, with the aid of counsel, to file an amended petition." Tenn. Code Ann. § 40-30-107 (repealed 1995). "The court may . . . freely allow amendments and shall require amendments needed to achieve substantial justice and a full hearing of all available grounds for relief." Tenn. Code Ann. § 40-30-115(a) (repealed 1995).[2] Thus, arguably the trial court should have entered factual findings and legal conclusions regarding the issue of the tire print testimony.

Nevertheless, we do not believe that the case must be remanded for findings on this issue. At trial, Officer Danny Humphrey testified that on the night of the offenses, he observed tire prints in the snow on the road through Foust Cemetery and also on the road by the turkey shoot. Officer Humphrey identified photographs of these tire prints. The trial court overruled the attorney's objection to Officer Humphrey's testimony that the tire prints at the cemetery and those at the turkey shoot appeared to be the same. The attorney objected to the state's request that Officer Humphrey compare the tire prints to the tires from the petitioner's car because the state had not qualified the officer as an expert. The trial court sustained this objection. The petitioner contends that his attorney should have challenged the tire print evidence in a pretrial motion and on appeal. The petitioner has failed to show that he was prejudiced because Officer Humphrey's testimony was limited to what he observed.

### III. FUNDS FOR DNA EXPERT

The petitioner contends that he is entitled to funds for an expert to test the DNA from the victim's rape kit and his blood sample. He argues that the trial court erred in determining that he failed to show a particularized need for this expert. He claims that he has continuously maintained his factual innocence and that no witness,

---

[2]The legislature did not include this provision in the 1995 act. Blair v. State, 969 S.W.2d 423, 424 (Tenn. Crim. App. 1997).

24

including the victim, has identified him as the perpetrator of these crimes. He argues that the DNA testing may be the only way for him to establish his innocence in this case. The state summarily responds that the petitioner's motion for expert services did not comply with Rule 13, § 5(b), Tenn. S. Ct. R., and that the trial court properly found that the petitioner has not shown a substantial need for the expert.

The petitioner filed a motion for expert forensic services on February 19, 1996. In this motion, he maintained that DNA analysis was not available to him or the state at the time of his trial in 1986. As his threshold showing that he would be deprived of due process if the funds were denied, the petitioner contended that he pled not guilty at trial and that he has continuously maintained his innocence. He stated that the victim has never identified him as the perpetrator and that the tests of the biological specimens at the time of trial were inconclusive. Alternatively, he requested that the trial court grant him a continuance until Professor Barry Scheck of the Benjamin N. Cardozo School of Law completed pro bono testing, which began on August 21, 1995. In the order denying post-conviction relief, the court denied the petitioner's motion, stating:

> There is no showing of a substantial need for an expert in this case. The proof is strong and all scientific evidence is directly pointed to the petitioner. There is no threshold showing that there was or is a reasonable likelihood that the assistance of an expert would have materially assisted him in the presentation of his case.

Neither due process nor equal protection requires the state "to provide expert services to indigent non-capital post-conviction petitioners." Davis v. State, 912 S.W.2d 689, 696-97 (Tenn. 1995); see Tenn. S. Ct. R. 13 § 5(b). Thus, the trial court properly denied the petitioner's request for funds for expert services.

Based upon the foregoing and the record as a whole, we affirm the trial court's denial of the petition for post-conviction relief.

_____
Joseph M. Tipton, Judge

CONCUR:

25

_____

David H. Welles, Judge


_____

Jerry L. Smith, Judge

26