CLAUDE ROBINSON, Plaintiff in error,

*v.*

STATE, Defendant in Error.

(*Knoxville,* September Term, (May Session) 1960.)

Opinion filed May 26, 1961.

FRANKLIN PARK, Jefferson City, for plaintiff in error.

WALKER T. TIPTON, Assistant Attorney General, for the State.

Mr. Justice Swepston delivered the opinion of the Court.

Plaintiff in error, hereinafter referred to as defendant, was convicted for involuntary manslaughter and sentenced to five years in the State Penitentiary, from which he has appealed and assigned error.

All of the assignments of error may be summed up into two propositions: (1) that the defendant's constitutional rights have been violated in the admission of the results of a bloodtest as evidence of his intoxication at the time of the accident, because it is alleged the State failed to show that the defendant's consent was obtained before the taking of such blood specimen, and (2) the trial judge erred in not instructing the jury that the presumption of intoxication evidenced by such bloodtest was not a conclusive presumption and shall not be construed as limiting the introduction of any other competent evidence bearing upon the question of whether or not the defendant was under the influence of an intoxicant within the prohibition of T.C.A. secs. 59-1031 to 59-1036, as provided by T.C.A. sec. 59-1033.

There is a three-count indictment; (1) murder in the second degree while engaged in the unlawful act of driving while intoxicated; (2) murder in the second degree while engaged in the unlawful act of reckless driving and (3) unlawfully driving a motor vehicle upon a public highway carelessly and recklessly and in wilful and wanton disregard for the rights and safety of others, etc., so as to endanger and be likely to endanger persons and property contrary to the statutes.

Only a brief statement of facts is necessary. On September 19, 1959, a head-on collision occurred between the automobile being driven by the defendant and another automobile in which Mr. and Mrs. Nelson were riding, as a result of which Mr. Nelson was fatally injured and expired shortly thereafter. The accident occurred about 7:30 P.M. while the defendant was towing another car to some stockcar races in which he was interested. There is ample evidence that he was intoxicated, in addition to the bloodtest above referred to. It is insisted in his behalf that he did not give his consent and in the alternative, that he was dazed and not capable of giving his consent and with that as a predicate, it is insisted that his constitutional rights were violated under State and Federal constitutional provisions, Const. art. 1, sec. 7, 9; U.S.Const. Amends. 4, 5, against self-incrimination and unlawful search and seizure and under the Fourteenth Amendment of the Constitution of the United States under the due process clause.

The testimony of Jimmy Wilburn, a deputy sheriff at that time, who lived within earshot of the collision, pretty well sums up the question of whether or not there was consent to the bloodtest. He testified that he was attracted to the scene by the occurrence of the collision so close to his home. He went there immediately and first gave attention to the people in the other car. Then when he and others attempted to put the defendant into a car and take him to the hospital, he put up a fight so that they had some difficulty in getting him off the ground where he had been lying face down but finally put him in a car and took him to the hospital where he was conscious and on his feet. There he testified the following occurred:

"I talked to him about a bloodtest, I thought he ought to have one, since he was drinking and this man was dead, I said it is a pretty serious thing, and he said, I don't need a bloodtest, I'm not hurt, and I said, well, if you are not hurt, you can wait and let the doctor tell you that, I said I am not trying to get you to take a bloodtest because you are hurt, I said we are trying to see if you are drinking, to see if you are drunk, to see how much alcohol you have in you. He said I haven't drunk but one beer or two, one or two beers, or something like that. I said let's take that bloodtest then, and he said no I am not hurt, and I said you say you are not drunk, I said the bloodtest will help prove whether you was or not, and he said O. K. like that, O. K."

Again quoting:

"Q. Mr. Robinson raise any objection at any time about taking this bloodtest? A. No. Afterwards he says why are you doing this, I am not drunk, and this just shows I am not drunk, and the sheriff said well if you are not drunk, I am charging you with it but if the bloodtest comes back O. K. and shows you are not drunk I will drop the charges. He said O. K."

Then counsel for defendant insists that the bloodtest wasn't voluntary because the sheriff's orders were for him to be held there. In this connection Jimmy Wilburn testified as follows:

"I told you that I was holding him on the sheriff's orders, and that while I was holding him I was trying to get him to take the bloodtest. That is what I was doing, but the reason I was holding him was not be-

cause of the bloodtest. He would have been held whether there was a bloodtest involved or not."

■ We have examined the record carefully and we are satisfied that this defendant gave his consent to the taking of this bloodtest and, therefore, all questions about violation of his constitutional rights are not for consideration in this case. Accordingly both assignments are overruled.

■ Referring now to the failure of the trial judge to instruct as to the legal effects of the results of the bloodtest, the court simply admitted the bloodtest evidence but did not charge anything with regard to the presumption of intoxication as evidenced by the test. This was more favorable to the defendant than it was adverse. The only thing in the evidence in regard to it is the details about how the test was made, that it showed 23% and the following occurred in the examination of Mr. Morrison, the chemist at Nashville who made the analysis of the blood sample:

"Q. Mr. Morrison, has there been a standard set, and accepted by the medical profession, the chemical profession, of the percentage of blood alcohol, the alcohol content of the blood, above which intoxication can be determined?

"Mr. Herndon: We object to that, Your Honor, because he hasn't qualified.

"The Court: If he knows if there has been a figure set, I'll let him testify, if he knows, overruled.

"Mr. Park: Save exceptions.

"A. There has been no value determined by the chemical profession, there has been a value which I

believe has been set by the medical profession and approved by the legal profession, it being 15%. Anything over that having the tendencies of intoxication.''

Obviously that did not tell the jury anything about the statute T.C.A. sec. 59-1033 and while the court did not charge that Code section, it did charge the following with regard to his being under the influence of intoxicants:

''By being under the influence of intoxicating beverages or drugs as set forth in the above statute (i. e. 59-1031) does not mean that he must be down in the ditch, or so intoxicated that he can not walk or talk or exercise his body and mind, but if you find that he has used an intoxicant, or a narcotic or barbital drug to the extent that it impairs his vision, the free exercise of his mind, or the free use of his body and limbs so that it is calculated to and does interfere with his driving and operation of a motor vehicle, then he would be guilty as charged in the first count and you would so find.''

We think, therefore, that if counsel for defendant had desired to have the court tell the jury that a showing of 15% or more of alcohol in the defendant's blood would create a presumption of intoxication but that the presumption was not conclusive and should not be construed as limiting the introduction of any other competent evidence pro or con upon the question, he certainly should have tendered a special request.

All assignments are overruled and the judgment below is affirmed.

All concur.