**Clyde Winfield CAPPS**

v.

**STATE of Tennessee.**

Supreme Court of Tennessee.

Feb. 19, 1974.

Ray Dodson, Chattanooga, for plaintiff in error.

David M. Pack, Atty. Gen., John B. Hagler, Jr., Asst. Atty. Gen., Nashville, Edward E. Davis, Dist. Atty. Gen., Lawrence Young and David Rotroff, Asst., Dist. Attys. Gen., Chattanooga, for defendant in error.

OPINION

McCANLESS, Justice.

On February 24, 1971, at about five o'clock in the morning two Greeneville police officers on patrol in the downtown area noticed an unfamiliar Ford automobile parked in a dark portion of a parking lot. The car had out-of-state license

plates. As the officers drove by, the tail lights on the car blinked. The officers turned around and stopped at the car to investigate. They found a male driver and female passenger in the front seat and the defendant, Clyde Winfield Capps, in the back seat. The officers inquired as to the reason the car was parked where it was, the identity of the occupants, and the ownership of the vehicle. The driver identified the defendant as the owner. The defendant identified himself as Donald Jones and said the car belonged to his wife. Capps was not able to produce identification.

The officers then asked the three to step out of the car. When they did, the officers observed on the front floorboard a gun covered on both ends by paper sacks. Upon inspecting the weapon, they found it to be a sawed-off .12 gauge shotgun loaded with buckshot. The police arrested all three persons for possession of an illegal weapon in violation of the National Firearms Act, 26 U.S.C.A. § 5861 et seq.

At the Greeneville police station, the police called an agent of the United States Department of the Treasury, since the arrests were made pursuant to the violation of a federal statute. Agent G. E. Childers arrived at the police station at about 7:30 o'clock that morning, took possession of the shotgun, and seized the automobile under authority of the Contraband Seizure Act, 49 U.S.C.A. § 781 et seq. That act requires that automobiles used to transport contraband, such as the illegal shotgun, be seized and forfeited. Soon after seizure of the vehicle, Agent Childers made an inventory of the car and its contents, as he was required to do. The actual inventory, though under the supervision of Childers, was partially conducted by Greeneville policemen, including Police Chief Kenneth Rollins. In the course of the inventory, a check writing machine was discovered in the trunk of the car. Rollins placed the machine in the property room at the police station.

At the time of the inventory, which was taken in the parking lot of the police station, none of the officers present had knowledge of a burglary on February 23, 1971, of the Chattanooga Saw and Supply Company in Chattanooga. A check writing machine and certain tools had been stolen in the burglary. About two and a half months later, having received information about the car's inventory from Rollins, the Chattanooga Police Department took possession of the checkwriter and in May, 1971, swore out burglary and larceny warrants against the defendant.

In a jury trial the defendant was convicted of concealing stolen property over the value of $100.00 in the Hamilton County Criminal Court. His attorney perfected an appeal to the Court of Criminal Appeals, assigning as error the trial court's failure to sustain a motion to suppress as evidence the introduction of the checkwriter. That court accepted the defendant's theory that the search and seizure of the machine were in violation of the Fourth Amendment of the United States Constitution, and reversed the conviction. We granted the State's petition for writ of certiorari.

There is no question in this case as to the arrest, the on-the-scene search of the automobile, and the seizure of the shotgun by Greeneville policemen. The defendant was tried and convicted in the United States District Court on charges stemming from his possession of the illegal weapon prior to his conviction in the state court on the burglary charge.

The basic question presented is whether the inventory and subsequent discovery of the checkwriter amounted to an illegal search and seizure. We hold that the search and seizure were reasonable under all the circumstances. Controlling is the United States Supreme Court's opinion in Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 [1967]. In that case, the defendant was arrested for violation of a state narcotics law. The state statute re-

quired any vehicle used in the transportation of narcotics to be seized and "held as evidence until a forfeiture has been declared or a release ordered." A week after the seizure, and while the car was lawfully in police custody awaiting forfeiture proceedings, police officers made an inventory of its contents and found evidence that was used later to convict the defendant on the narcotics charge. The late Justice Hugo Black, writing for the majority of the court, wrote:

> "Here the officers seized petitioner's car because they were required to do so by state law. They seized it because of the crime for which they arrested petitioner. They seized it to impound it and they had to keep it until forfeiture proceedings were concluded. Their subsequent search of the car—whether the State had 'legal title' to it or not—was closely related to the reason petitioner was arrested, the reason his car had been impounded, and the reason it was being retained. The forfeiture of petitioner's car did not take place until over four months after it was lawfully seized. It would be unreasonable to hold that the police, having to retain the car in their custody for such a length of time, had no right, even for their own protection, to search it. It is no answer to say that the police could have obtained a search warrant, for '[t]he relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable.' United States v. Rabinowitz, 339 U.S. 56, 66, 70 S.Ct. 430, 435, 94 L.Ed. 653."

We consider that the Contraband Seizure Act requires the same result here as the state forfeiture statute in Cooper v. California, supra. United States v. Young, 456 F.2d 872 [8th Cir., 1972]; Burge v. United States, 342 F.2d 408 [9th Cir., 1965]. As in the *Cooper* case the car here was in the lawful custody and exclusive possession of the United States government, as authorized by federal statute, when the inventory was conducted. The inventory began as a lawful routine recording of the contents of the car for purposes or protecting the police from charges of theft and the defendant from any loss of personal property during the period of his detention, and for the purpose of preparing the vehicle for auction in the event of forfeiture. Also, as in the *Cooper* case, the seizure and inventory were closely related to the reason why the defendant was arrested, the reason why the vehicle was impounded, and the reason why it was being retained.

An inventory of the contents of the car would be meaningless without an accounting of items in the trunk. Once they gained lawful access to the trunk, the officers could constitutionally seize items within their "plain view." See Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L. Ed.2d 1067 [1968], where police officers impounded a car in which a robbery suspect had been arrested. Upon opening the car door in an effort to safeguard the car during its impoundment, the officer discovered incriminating evidence. In a *Per Curiam* opinion, the court held:

> "Once the door had lawfully been opened, the registration card, with the name of the robbery victim on it, was plainly visible. It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." Harris v. United States, supra.

In Armour v. Totty, Tenn., 486 S.W.2d 537 [1972], we summarized the constitutional requirements of the doctrine of "plain view": (1) the officer must have the right to be in the position from which he has the view; (2) the object must be in plain view; (3) the seized object must be discovered inadvertently (or under exigent circumstances); and (4) the incriminating nature of the object must be apparent from the plain view of the object.

In this case, the officers were recording the items in the trunk as part of a required custodial inventory. The checkwriter was

in plain view on the floor of the trunk. The discovery was inadvertent, since testimony was undisputed that none of the officers present was aware of a previous burglary in which a similar machine had been stolen. As to the final requirement, we have said that the test for determining the incriminating character of the object "must be likened to the standard for probable cause." Armour v. Totty, supra. Agent Childers testified that he had probable cause, based upon his experience, in the circumstances existing in this case, including the finding of the loaded shotgun, to seize the checkwriter and release it to local authorities to be held as possible evidence.

Since the search and seizure of the checkwriter were legal, we do not share the concern of the majority of the Court of Criminal Appeals that this case represents unconstitutional collusion between federal and state authorities of the type condemned in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 [1961], and Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 [1960]. The so-called "silver platter" doctrine, in which officers in one jurisdiction make use of evidence illegally seized by officers in a different jurisdiction, is not involved here. It was no more unconstitutional for the federal agent to turn over the legally seized machine to local authorities than it was when the local authorities turned over to the federal agent the illegal shotgun which they had earlier seized from the defendant's car.

We reject the contention that the actual search and seizure were carried out by the local police, who were not authorized to do so by the federal statute. Testimony proved that the inventory was initiated and controlled by Agent Childers; that the local officers merely helped him under his guidance and direction; and that even though Police Chief Rollins seized the machine, he did so under authorization from Childers and only after Childers had opened the car trunk with the defendant's keys. It is plainly shown in the record that the checkwriter was under the exclusive control of the federal government until Agent Childers made the voluntary decision to release it to the local police.

■ We also find merit in the state's alternative ground establishing the lawfulness of the search. When the municipal police officers arrested the defendant and discovered the illegal weapon in the car, they then had probable cause to search the vehicle at the scene for other contraband. See, e. g., United States v. Garner, 326 F. Supp. 811 [E.D.Tenn., 1970], affirmed 451 F.2d 167 [6th Cir. 1971]; United States v. Booker, 461 F.2d 990 [6th Cir., 1972]; Heffley v. Hocker, 420 F.2d 881 [9th Cir., 1969], vacated sub nom. Hocker v. Heffley, 399 U.S. 521, 90 S.Ct. 2236, 26 L.Ed. 2d 780 [1970], 429 F.2d 1321 [1970]. Under the doctrine of Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 [1970], if the warrantless search at the scene was justified, it would also be justified if the car were then removed to the police station and searched there. Once lawfully in the car, as we observed above, the officers might then seize evidence of a crime within their plain view.

We reverse the judgment of the Court of Criminal Appeals and affirm that of the trial court.

DYER, C. J., CHATTIN and FONES, JJ., and LEECH, Special Justice, concur.