**Frank C. DRINKARD, Petitioner,**

v.

**STATE of Tennessee, Respondent.**

Supreme Court of Tennessee.

July 30, 1979.

Hughie Ragan, Jackson, for petitioner.

Robert A. Grunow, Asst. Atty. Gen., Nashville, for respondent; Brooks McLemore, Jr., Atty. Gen., Nashville, of counsel.

## OPINION

BROCK, Chief Justice.

Defendant, Frank C. Drinkard, was convicted of simple possession of marijuana and received a suspended sentence of eleven months, twenty-nine days. The Court of Criminal Appeals affirmed the conviction and defendant petitioned this Court for certiorari review.

Although defendant raises several issues, we deem it necessary to consider only his claim that the lower courts erred in holding that police had a right to impound his automobile and conduct a warrantless search of the vehicle when at the time of his arrest for a traffic violation defendant sought permission to let his passenger companion take the car as an alternative to impoundment. We find that under the circumstances here presented, this search cannot be sustained as an inventory search but was an unreasonable investigatory search and an invasion of defendant's justifiable expectation of privacy.

On the night of November 10, 1976, defendant was riding in his car with a friend when he was stopped by police on suspicion of drunk driving. Defendant was placed under arrest for driving while intoxicated and informed that, pursuant to the policy of the Jackson Police Department, his car would be towed in and an inventory search of its contents conducted.[1] Defendant requested that his female companion be allowed to drive the car away. The arresting officer refused this request on the grounds that the woman was neither the owner of the car nor the defendant's wife. Although the woman had a cast on one of her legs, the arresting officer testified that the cast was not a factor that he considered in refusing defendant's request to let her take custody of the car. Defense counsel questioned the officer about this matter:

"Q. So, now, the girl at that time, as far as you could tell, was capable of driving a car?

"A. Considering she had a cast on her leg, I guess she could.

. . . . .

"Q. A cast.

"A. I don't know whether she could or not—

"Q. Well, but there was no question raised that she could not drive the car except the fact that ya'll were taking the car in?

"A. Well, she could not drive it because she did not have the authority as our department determines by our policy.

"Q. The only reason that kept her from driving the car as far as you are considering at this time was that you could not turn the car over to her?

"A. Correct.

"Q. And she was willing to drive the car.

1. Sections A through F of Article 14, Rules and Regulations of the Police Department, Jackson, Tennessee, were read into the record. Section A provides "if any person is arrested while in their vehicle, if the arrest is in conjunction with the person being jailed, the vehicle will be towed by a wrecker service." Section C re-

quires that "all vehicles towed in, except in the case of a traffic accident, will be inventoried as completely as possible and the inventory card filled out." According to Section F, "the wrecker of the month will be called to tow all vehicles if an arrest is made, and the city is held liable for that person's vehicle."

"A. Right."

The officer had testified previously on direct examination that the woman was not intoxicated and that "[s]he was able to function with coordination pretty good."

Prior to the arrival of the wrecker, police conducted a complete search of defendant's car while defendant was seated in the back of the police car,[2] and discovered a closed box on the front seat and a rolled-up grocery sack in the trunk, both containing what appeared to be marijuana.

At trial, defendant objected to admission of the marijuana as the product of an illegal search on grounds that the officer had no probable cause to believe there was contraband in the automobile, and the officer did not have lawful custody of the vehicle. The trial judge overruled the motion.

In affirming defendant's conviction, the Court of Criminal Appeals found the case controlled by *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). The appellate court also cited T.C.A., § 59–1018, requiring that any person arrested for driving while intoxicated be taken immediately before a magistrate. It further found that the officers had acted reasonably in following standard police regulations.

Courts throughout the nation have given substantial consideration in the past few years to the circumstances under which police may or may not impound automobiles and then conduct an inventory of the contents, consistent with constitutional protections against unreasonable searches and seizures. *See, e. g.*, Annot., 48 ALR 3d 537 (1973). This Court has not had occasion to consider the issue in a context comparable to the instant case. In *Capps v. State*, Tenn., 505 S.W.2d 727 (1974), an impoundment and inventory search were upheld on grounds that the car was seized under authority of the Contraband Seizure Act, 49 U.S.C.A. § 781 *et seq.* That act requires that automobiles used to transport contraband be seized and forfeited. In *Capps, supra*, the contraband was an illegally sawed-off shotgun plainly visible to the arresting officer from outside the car. The subsequent inventory search was directed by a federal agent called by local police. The problem in the instant case does not extend to a consideration of the limited inventory search that law enforcement officials may conduct once an automobile is in their custody under force of law, as in *Capps v. State, supra*. The problem for resolution here concerns whether the automobile ever lawfully came into the custody of the police, thus permitting a subsequent inventory search. The facts here presented compel the conclusion that there was no lawful impoundment in the first instance.

The decision of the United States Supreme Court in *South Dakota v. Opperman, supra*, has limited application to the case at bar. The issue in *Opperman* concerned the constitutionality of a "routine inventory search of an automobile lawfully impounded." *Id.*, 428 U.S. at 365, 96 S.Ct. at 3095. The vehicle in *Opperman* had been parked on the street in a part of town where on-street parking was prohibited. The car was ticketed twice, once at 3:00 a. m. and again at 10:00 a. m., and was finally towed to the city impoundment lot shortly thereafter. Police conducted a routine inventory search of the car at the lot and discovered a bag of marijuana in the glove compartment. The Court broadly upheld police impoundments of vehicles "[i]n the interests of public safety" and "community caretaking functions" such as towing away cars after automobile accidents and ordinance violations which jeopardize "the public safety and the efficient movement of vehicular traffic." 428 U.S. at 368–69, 96 S.Ct. at 3097. The Court justified the routine inventory search that commonly follows impoundment as having three purposes: protection of the owner's property while in police custody; protection

---

**2.** The State has not contended that the search was incidental to the arrest of defendant. It could *not* have been, since the interior and trunk of defendant's automobile were not areas within defendant's immediate control as he was seated in the back of the police car at the time of the search. *See, Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *Rhinehimer v. State*, 487 S.W.2d 669 (Tenn.Cr. App.1972).

of police against claims of lost property; and protection of police from potential danger. *Id.* at 369, 96 S.Ct. at 3097.

Although the *Opperman* plurality stated that "caretaking procedures have almost uniformly been upheld by the state courts," 428 U.S. at 369, 96 S.Ct. at 3097, an increasing number of jurisdictions are scrutinizing the facts of each case to determine if the asserted need of the police to impound and search a car outweighs the constitutionally protected interest of the citizen in the privacy of his or her automobile and the personal possessions contained therein. *See, e. g., State v. Boster,* 217 Kan. 618, 539 P.2d 294 (1975); *State v. Hatfield,* 364 So.2d 578 (La.1978); *State v. Goodrich,* 256 N.W.2d 506 (Minn.1977); *State v. Slockbower,* 79 N.J. 1, 397 A.2d 1050 (1979); *State v. Ercolano,* 79 N.J. 25, 397 A.2d 1062 (1979). *See also, People v. Nagel,* 17 Cal.App.3d 492, 95 Cal.Rptr. 129 (1971); *City of Danville v. Dawson,* 528 S.W.2d 687 (Ky.1975); *Dixon v. State,* 23 Md.App. 19, 327 A.2d 516 (1974); *State v. Singleton,* 9 Wash.App. 327, 511 P.2d 1396 (1973).

■ The guideline that has been persuasively applied in numerous cases, and with which we are in agreement, is that if the circumstances that bring the automobile to the attention of the police in the first place are such that the driver, even though arrested, is able to make his or her own arrangements for the custody of the vehicle, or if the vehicle can be parked and locked without obstructing traffic or endangering the public, the police should permit the action to be taken rather than impound the car against the will of the driver and then search it. Just cause to arrest the driver is not, alone, enough; there must also be reasonable cause to take his vehicle into custody.

■ The rule was succinctly expressed in *State v. Bales,* 15 Wash.App. 834, 552 P.2d 688 (1976), in which defendant was stopped for speeding and arrested on an outstanding warrant. His car was impounded despite his plea to have a friend pick up the vehicle within a few minutes and after giving police the friend's telephone number. The court stated:

"When a friend or relative is available to move a vehicle for a defendant just arrested on a traffic charge, the arresting officer is not justified in calling for an impoundment absent other circumstances. . . . Impoundment of a citizen's vehicle following his or her arrest on a traffic charge is inappropriate when reasonable alternatives to impoundment exist. To permit a subsequent warrantless inventory search to be accomplished thereby would be improper."

In *Virgil v. Superior Court,* 268 Cal. App.2d 127, 73 Cal.Rptr. 793 (1968), a case quite similar to the present case on the facts, the defendant was stopped and arrested for reckless driving. He had two friends in the car with him. Police impounded the car and upon making an inventory search discovered marijuana under the front seat. The court refused to sanction the search:

"The burden was upon the prosecution to justify the search. (Citations omitted.) It was therefore its burden to explain that an impounding of the car was necessary. Virgil was not alone. No reason appears why his friends could not have taken charge of the vehicle. The officers did not consult Virgil's wishes or the willingness of his companions to drive the car to a place of safekeeping (the only legitimate purpose under the facts known at the time for which custody could have been taken)."

In another similar case, *State v. Gaut,* 357 So.2d 513 (La.1978), the defendant was arrested for drunk driving and requested that a passenger be permitted to drive the car away for him. Police refused, saying later that the passenger also "smelled of alcohol," but this observation was never satisfactorily substantiated at trial. They impounded the car and found marijuana as a result of inventorying the contents. The court held the search to be invalid.

It does not appear in the present case that the State has carried the burden of showing that the impoundment here was

necessary. "[T]he ultimate issue is whether under all the facts and circumstances of the particular case there were reasonable grounds for an impoundment . . . . . The burden is on the State to present sufficient evidence to show the reasonableness of the impoundment." *State v. Bales, supra* at 689, quoting *State v. Greenway*, 15 Wash.App. 216, 547 P.2d 1231 (1976). *See Virgil v. Superior Court, supra*, at 796. The regulations of the Jackson Police Department certainly did not have the force of law, and the circumstances showed an obvious reasonable alternative to impoundment, leaving the car in the care of the defendant's passenger. Police testimony indicates that there was no reason why the woman could not have driven the car away. She had defendant's consent; she was not intoxicated; although she had a cast on her leg, she was capable of getting out of the car and walking around outside of it while talking to police; the cast was not given as a reason for denying defendant's request. Furthermore, the police did not consult defendant's wishes or consider his willingness to leave the car parked and locked alongside the road until either he or his passenger could make other arrangements.

The application of the foregoing principle to the present case does not conflict with *United States v. Opperman, supra.* The owner of the car in *Opperman, supra*, was not present to make other arrangements for the vehicle or his personal possessions at the time the police towed in the car. 428 U.S. at 375, 96 S.Ct. at 3100.

The State argues in its brief that an intoxicated driver is *per se* incompetent to effectively authorize another person to take custody of his or her automobile and to release police from civil liability resulting from compliance with such a request. This argument is unpersuasive; the fact of intoxication alone has been held not to render a person incompetent to submit to chemical tests for alcohol content of the blood, to consent to a search of his or her vehicle or to make an admissible confession. *See, e. g., Robinson v. State*, 208 Tenn. 521, 347 S.W.2d 41 (1961); *Pyburn v. State*, Tenn.Cr. App., 539 S.W.2d 835 (1976); *Fee v. State*, Tenn.Cr.App., 497 S.W.2d 748 (1973); *Williams v. State*, Tenn.Cr.App., 491 S.W.2d 862 (1972); *State v. Strange*, La., 334 So.2d 182 (1976). Actually, it is the degree of the driver's intoxication that should be determinative of this issue; certainly one may be mentally competent to give valid consent to a disposition of his or her automobile, and yet be too intoxicated under the statute, T.C.A., §§ 59–1031, 59–1047, to lawfully operate an automobile. The State has made no showing in the present case that defendant was too intoxicated to authorize his companion to take custody of the car.

As the Louisiana Supreme Court has pointed out, it would be a simple matter to alter the inventory form currently in use to provide for signed consent by the motorist to leave his car parked, locked and uninventoried, or its custody given to a friend, family member or personally chosen wrecker service. *State v. Gaut, supra*, at 516 n.1. The form could disclaim any police liability for subsequent loss or damage of property. Our courts have recognized the efficacy of signed consent forms in other contexts. *See, e. g., Hawkins v. State*, 543 S.W.2d 606 (Tenn.Cr.App.1976). The Louisiana court noted:

> "The justification for the inventory search of the vehicle is ostensibly to protect the occupant of the vehicle against loss of his property or the law enforcement agency against the occupant's claim for failure to guard against such loss. This justification has a very hollow basis indeed, if the occupant disclaims that any valuables are involved and is willing to consent to the agency's failure to afford him such protection by an inventory search." *State v. Gaut, supra* at 516.

We hold, therefore, that the totality of the factors here present indicates that the evidence seized from Drinkard's automobile was the product of an unreasonable search in violation of the Fourth Amendment and Article I, Section 7, Constitution of Tennessee. The trial court erred in admitting the evidence over defendant's objection, and the Court of Criminal Appeals erred in af-

firming that decision. The case is remanded to the trial court for a new trial.

FONES, COOPER, HENRY and HARBISON, JJ., concur.